## MANSUSS REALTY CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109134.   Promulgated April 14, 1943.

*Howe P. Cochran, Esq.*, and *Margaret F. Luers, Esq.*, for the petitioner.

*William G. Ruymann, Esq.*, for the respondent.

### OPINION.

KERN, *Judge:* The Commissioner determined deficiencies in petitioner's corporation income and excess profits taxes for the year 1938 in the total amount of $568.82.   Petitioner contends the Commissioner erred in the application of the provisions of section 24 (c) of the Revenue Act of 1938 to its deduction of a certain salary item accrued by petitioner in 1938.   This deduction was in the amount of $2,000 and was claimed by petitioner for salary accrued, but not paid until March 16, 1939, to its president, Jacob Sussman, who, with his wife, Ida, owned all of the capital stock of the corporation.

The petitioner filed its original corporation income and excess profits tax return on an accrual basis for the year 1938 with the collector at New York City on March 15, 1939, and an amended return on June 29, 1940.

The statutory authority relied upon by the Commissioner is found in section 24 (c) (1), (2), and (3) of the Revenue Act of 1938, which reads as follows:

SEC. 24. ITEMS NOT DEDUCTIBLE.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(c) UNPAID EXPENSES AND INTEREST.—In computing net income no deduction shall be allowed under section 23 (a), relating to expenses incurred, or under section 23 (b), relating to interest accrued—

(1) If such expenses or interest are not paid within the taxable year or within two and one-half months after the close thereof; and

(2) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and

(3) If, at the close of the taxable year of the taxpayer or at any time within two and one-half months thereafter, both the taxpayer and the person to whom the payment is to be made are persons between whom losses would be disallowed under section 24 (b).

Jacob and Ida Sussman filed an original joint income tax return on March 15, 1939, on Form 1040 A, which did not include the $2,000 here in question. On June 29, 1940, they filed an amended return on Form 1040, including this amount, and specified that it was filed on an accrual basis.

Jacob Sussman kept no personal books or records of accounts.

Out of the $2,000 accrued by petitioner as an expense item on account of salary payable to Jacob Sussman, $100 was paid on January 13, 1939, and to the extent of that amount, section 24 (c) is clearly inapplicable.

The remaining $1,900 was paid by check, the check being dated and clearing the bank on March 16, 1939, and it becomes necessary to decide, first, whether such payment was made within two and one-half months after the close of the taxable year, and, second, whether, by reason of the method of accounting of the person to whom payment was to be made, the amount thereof was not, unless paid, includible in the gross income of such person for the taxable year in which, or with which the taxable year of the taxpayer ends. Petitioner concedes that the relationship between itself and the person to whom the payment was to be made was such as to bring them within the provisions of section 24 (c) (3), and our task is therefore confined to a consideration of the correctness of the Commissioner's determination that the conditions prescribed in section 24 (c) (1) and (2) were also present.

As to the condition prescribed by section 24 (c) (1), petitioner urges that payment was made on the last day of the two and one-half months allowed, on the theory that, first, if a month is to be considered as thirty days, the payment was in time, since it was made on the seventy-fifth day after the close of the taxable year; and, second, if calendar months are meant, then March 16 is the middle day of March, and the taxpayer should have the benefit of any ambiguity in the language of the statute.

Respondent, on the other hand, insists that March 15 is the final day upon which such payment would render the deduction allowable, and relies chiefly on an example set out to illustrate the application of section 24 (c) in article 24-6 of Regulations 101, in which reference is made to March 15 as the last day of the period allowed by the statute for such payments in order to render the deduction allowable.

The question is a troublesome one. Because of the widespread association of the date March 15 with taxpaying time limits in this country, the casual reference in the regulation to that date as the end of the

period allowed by the statute is understandable, but hardly controlling in view of the clear wording of the statute. Section 53 (a) (1) of the Revenue Act of 1938 requires returns on the calendar year basis to be made "on or before the 15th day of March following the close of the calendar year," and returns on the fiscal year basis to be made "on or before the 15th day of the third month following the close of the fiscal year." In section 24 (c), however, there is twice used the phrase "within two and one-half months" after the close of the taxable year. So far as we have been able to discover, this is the only case in legislative history when a period of time is measured by statute in terms of one-half of a month. In view of the fact that the same act (and prior revenue acts) used the phrase "the 15th day of the third month following," it can not be said that Congress was unaware of the proper linguistic formula for designating the 15th of March as the crucial date in a case such as the instant one, if it had intended to do so. By departing from time honored and customary phrases of chronological mensuration, and inaugurating the measurement and calculation of time in terms of half a month, instead of in terms of days, or weeks, or definite dates in months, we are faced with a problem in statutory construction for which there is no helpful precedent. No cases have been cited to us by counsel, and we have been able to find none. We can only surmise that this absence of authorities on the question is due to the fact that no other legislation has prescribed a period of two and one-half months.

If we could consider that the word "month" as used in the statute meant a lunar month of 28 days or meant 30 days, our problem would not be difficult, since in such a case the period of time prescribed in the statute would be either 70 or 75 days. However, it is now uniformly held that the word "month," mentioned generally in a statute or elsewhere, means a calendar month, unless a contrary intent is indicated. *Guaranty Trust & Safe Deposit Co.* v. *R. Co.*, 139 U. S. 137; *Baltimore & D. P. R. Co.* v. *Pumphrey*, 74 Md. 86; 21 Atl. 559; *Guaranty Trust & Safe Dep. Co.* v. *Buddington*, 27 Fla. 215; 9 So. 246; *Daley* v. *Anderson*, 7 Wyo. 1; 48 Pac. 839, 840. The expression "two and one-half months" must, therefore, be construed to mean two calendar months (in this case January and February), and one-half of the next succeeding calendar month, which, in a case such as this, of a thirty-one day month, can mean no more and no less than 15½ days. We are not unaware of the general rule that the law will not consider fractions of a day in computing when a period of time prescribed by law or contract expires. *Burnet* v. *Willingham Loan & Trust Co.*, 282 U. S. 437; *In re Gregg*, 213 Pa. 260; 62 Atl. 856. However, the cases in which this remedial legal fiction has been applied are cases in which the period of time is stated in terms of days, or in terms of weeks,

months or years, the chronological unit of which is a full, complete, and undivided day. If a statute explicitly said that the period of time in question should be 15½ days, the courts would be compelled to give effect to the fraction of a day prescribed in the statute. In our opinion the statute which we must here construe is to the same effect, since the period of time set out by the plain (although troublesome) words of the statute is one-half of a month which has 31 days. Thus, the expiration of the period within which payment in this case would have operated to render the deduction available to the petitioner was fixed by the terms of the statute at noon of March 16, 1939. We can reach no other conclusion under the circumstances. Legal fictions and canons of construction can not alter arithmetical principles when they are patently embodied in an act of Congress.

There is, however, no evidence whatever in the record to show whether the payment was made before noon or after noon on March 16, 1939. It follows that the petitioner has not acquitted itself of the burden of proof in this respect, and we must rely and act upon the presumption of correctness which attaches to the Commissioner's determination.

It thus becomes necessary to determine whether, by reason of the method of accounting of Jacob Sussman, the amount involved was not, unless paid, includible in his gross income for 1938. Sussman and his wife filed an original joint return on March 15, 1939, on Form 1040 A, which does not disclose information concerning the basis of the taxpayer's return. This return did not include the salary item which is the basis of this controversy. On June 29, 1940, they filed an amended return, on Form 1040, showing this item and stating that it was prepared on an accrual basis. This amended return was filed after the Government's investigation into petitioner's income and excess profits tax status.

Petitioner insisted at the time of the hearing in this proceeding that it was not necessary, under a strict interpretation of the statute, for it to show specifically what system of accounting Sussman employed in his personal affairs. Unfortunately, petitioner failed to establish not only which system of accounting Sussman maintained, but also whether he maintained any at all, or even any books or records of any kind.

In its reply brief, however, petitioner has advanced the contention that Sussman was on an accrual basis, and relies largely on the testimony of Sussman to support its contention. All attempts to determine from that testimony whether Sussman was on a cash basis, an accrual basis, a hybrid basis, or any basis at all, are barren of results. It is true that, on direct examination of Sussman, the following testimony appears:

Q. Now, on the basis of your accounts and on the way you report to the government, do you include items in your return on the year you earned them, or on the year that they are paid to you?

A. On the year I earn them.

But, on cross-examination on that precise point, we find the following:

Q. What did you mean by your answer to Mr. Cochran that you reported your income when earned?

A. Yes.

Q. What did you mean by that?

A. I mean I report my income in the year when I earn, not the year when the corporation hasn't got the full amount what I earned, if it leaves it for next year. So that is why I say I only say the year I am earning. That is, after I get paid. That is what I mean.

We have read and reread with the utmost care this testimony of Jacob Sussman, but we have failed to catch its exact meaning.

However, it is not necessary to labor the exegesis of this passage because of other considerations. There is a complete absence of any competent showing that Sussman kept any personal books or accounts, and nothing was offered in evidence or in any way referred to, except in the excerpt first above quoted. So far as this case is concerned, we must proceed on the assumption that he did not maintain any personal accounting system.

It has long been established that a taxpayer who keeps no books or records of account can not be on an accrual basis. In such case, the cash basis is proper. *John A. Brander*, 3 B. T. A. 231; *Greengard* v. *Commissioner*, 29 Fed. (2d) 502; *Daniel Hecker*, 17 B. T. A. 874.

We must therefore regard Sussman as having reported his income on a cash basis, which is what he appears, in fact, to have done in his original return filed March 15, 1939. His amended return, filed more than a year later, and after the Government's investigation of petitioner's income tax affairs was undertaken, asserts that it was filed on an accrual basis, and does include some accruals, including the one here involved, but, under the circumstances of its filing, and in view of what was actually done in his earlier return, this assertion is not persuasive. As we have seen, such a basis was not available to him in the absence of the actual maintenance by him of books or records kept on an accrual system of accounting.

We therefore conclude that the petitioner has not shown the Commissioner's determination to have been in error in disallowing the deduction as to $1,900 of the accrued salary.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

STERNHAGEN, SMITH, ARUNDELL, MELLOTT, and ARNOLD, *JJ.*, concur only in the result.